**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Robert E. Blackburn, Judge**

Civil Case No. 04-CV-01135-REB-PAC

ADRIAN OSORNIO,
BETSY MARTINEZ,
JESSICA WILLIAMS,
ISTQUIA REYNA,
MIGUEL FONTANET, and
MAYRA CARMONA,

      Plaintiffs,

v.

T-MOBILE USA, INC.,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

The matter before me is Defendant T-Mobile USA, Inc.'s Motion for Summary Judgment [#22], filed April 22, 2005. I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question). I grant the motion.

Plaintiffs formerly worked for defendant at its Colorado Springs call center as part of a team of Customer Care Representatives. Plaintiff Adrian Osornio, who is of Hispanic origin, was their supervisor. On February 1, 2003, Erika Amezquita became Osornio's supervisor. Soon after she assumed this position, Amezquita held a coaching session with Osornio in which she observed that he was excessively negative with his team members and was perceived to be threatening them for

complaining.  (*See* Def. Motion App., Exh. A-5.)  The following month, Amezquita issued a written warning to Osornio in which she noted, *inter alia*, that Osornio's "team sees [his] coachings as discipline sessions" and stated that he need to work on "[c]reating a [p]ositive work environment" for his team.  (*See id.*, Exh. A-6.)  Two days later, Amezquita learned from three members of Osornio's team that, following the written warning, Osornio had held a team meeting in which he told his team "that he was going to be fired and so were they."  (*See id.*, Exh. A-4 at 43.)  Amezquita concluded that Osornio had threatened his team, contrary to the mandate of his written warning.  (*See id.*, Exh. A-10.)  Amezquita consulted with human resources personnel, her own supervisor, and the call center's General Manager, who collectively decided to terminate Osornio's employment that very day.  The team was notified immediately, at which time team members told Amezquita that they thought the action was "unfair."  (*Id.*, Exh. A-12 at 82.)

    Soon thereafter, Osornio drafted a letter in which he denied threatening his team members and complained that there had been no proper investigation of the allegations.  The letter included the signatures of eight team members, including all the current plaintiffs, whom Osornio stated would testify that he had made no threats against them.  (*Id.*, Exh. A-14.)  A month later, Osornio wrote a second letter complaining about the way in which the investigation into his complaint had been handled.  This letter was signed by seven team members, including all the instant plaintiffs, who averred that they had not been contacted or questioned as part of the investigation.  (*Id.*, Exh. A-9.)  The termination decision ultimately was upheld, and

plaintiffs subsequently filed this lawsuit, alleging causes of action for discrimination, retaliation, and sexual harassment under Title VII, as well as for and breach of contract and promissory estoppel under Colorado state law.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134. The party who does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary

3

judgment evidence. **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert. denied**, 120 S.Ct. 334 (1999); **Nutting v. RAM Southwest, Inc.**, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

Osornio claims that defendant discriminated against him on the basis of his national origin. Although defendant concedes for purposes of this motion that Osornio can establish a *prima facie* case of national origin discrimination, it argues that the threats he made to his team constitutes a legitimate, non-discriminatory reason justifying his termination. **See Garrett v. Hewlett-Packard Co.**, 305 F.3d 1210, 1216 (10th Cir. 2002). Osornio argues that this explanation is pretextual because he did not in fact threaten the team. Such disavowals are insufficient to create a genuine issue of material fact as to pretext. **See Kendrick v. Penske Transportation Services, Inc.**, 220 F.3d 1220, 1231-32 (10th Cir. 2000).

Osornio further contends that defendant's failure to follow its own progressive discipline policy is evidence of pretext. **See Garrett**, 305 F.3d at 1216. In this regard he relies on the testimony of Barbara Berry, a former supervisor at T-Mobile. Berry testified that in dealing with an employee who was having performance issues, she was trained by defendant to first give the employee a performance plan, then a verbal warning, followed by a written warning, and finally, termination. (Plfs. Response App., Exh. A at 6-8.) Osornio was not given a verbal warning prior to his written warning and termination. Nevertheless, "an employer's fail[ure] to follow its own internal *procedures* does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its

4

employment decision were pretextual." **Randle v. City of Aurora**, 69 F.3d 441, 454 (10th Cir. 1995) (emphasis in original). Amezquita testified that it was her belief that defendant had no mandatory progressive discipline policy and that appropriate disciplinary action was to be determined on a case-by-case basis. (Def. Reply App., Exh. A-34 at 19.) **See Randle**, 69 F.3d at 455 (evidence that defendant believed it was following internal procedures showed lapse in process was mistake, not pretext). In this case, Osornio proffers no evidence to suggest that Amezquita's testimony in this regard was false by showing, for example, that the alleged progressive discipline policy was applied disadvantageously to Hispanics or that he was treated differently from similarly situated non-minority employees who had performance issues of comparable seriousness. **See Kendrick**, 220 F.3d at 1230.[1] Accordingly, defendant is entitled to summary judgment on this claim.

The remaining plaintiffs all assert retaliation claims under Title VII. To prove this cause of action, plaintiffs must establish, *inter alia*, that they opposed a practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a); **Stover v. Martinez**, 382 F.3d 1064, 1070 (10th Cir. 2004). However, there is absolutely no evidence that any plaintiff ever complained that Osornio's termination was discriminatory or otherwise related to his national origin. Instead, at the initial meeting announcing Osornio's termination,

---

[1] Osornio also claims that defendant's failure to conduct an adequate investigation pursuant to its Alternate Resolution Process ("ARP") shows pretext. There are at least two problems with this argument. First, Osornio only invoked the ARP *after* his employment had been terminated. There thus can be no logical causal connection between any actions taken in that process and the decision to terminate his employment. Second, the ARP does not anywhere provide an employee the right to the type of investigation Osornio claims he was denied. (**See** Def. Reply App., Exh. A-36.)

some team members protested that the action was unfair. The first letter plaintiffs signed merely denied that Osornio had in fact threatened the team, while the second only stated that plaintiffs had not been contacted as part of defendant's investigation of its employment action. There being no evidence that any plaintiff ever opposed any action made illegal under Title VII, defendant is entitled to summary judgment on this claim as well. *See Petersen v. Utah Department of Corrections*, 301 F.3d 1182, 1188-89 (10th Cir. 2002); *Archuleta v. Colorado Department of Institutions, Division of Youth Services*, 936 F.2d 483, 487 n.2 (10th Cir. 1991).

Plaintiffs also assert claims for breach of contract or, alternatively, for promissory estoppel. Employment in Colorado is presumed to be at-will, and an employee therefore generally can be terminated without cause or notice at any time. *See Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). However, this presumption may be rebutted if the employer has promulgated a personnel manual or handbook that purports to limit its right to terminate employees at will and the circumstances demonstrate that the employer manifested a willingness to be bound by the terms of the manual. *Evenson v. Colorado Farm Bureau Mutual Insurance Co.*, 879 P.2d 402, 408-09 (Colo. App. 1993). "[E]ven if the requisites for formation of a contract are not found, the employee would be entitled to enforce the termination procedures under a theory of promissory estoppel if he can demonstrate that the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures." *Keenan*, 731 P.2d at 712.

Neither of these theories is applicable to the facts of this case. Aside from the fact that plaintiffs have failed to point to any written manual or handbook to support their theory,[2] defendant clearly and repeatedly disclaimed any intention to alter the at-will nature of plaintiffs' employment. **See Evenson**, 879 P.2d at 409 ("[M]anifestation of willingness to be bound [to the terms of an employment contract] can be inferred if there is no disclaimer in the manual stating that it does not constitute a contract or if such disclaimer, though present, is not clear and conspicuous."). Prior to employment, each plaintiff completed an application that directed the applicant to "[p]lease read the following carefully before signing this application." Four of the eleven substantive statements following that admonition alerted applicants to the fact that their employment was at-will and that they would not have an employment contract with defendant. The final bullet point affirmed that "[b]y signing this application I indicate my understanding of the above factors." (Def. Motion App., Exh. A-27.) Each plaintiff was offered employment in a letter including an entire paragraph reiterating the at-will nature of the employment relationship. (**Id.**, Exh. A-29.) Finally, the employee handbook, receipt of which each plaintiff acknowledged in writing, clearly and conspicuously disclaimed any intention to create a contract or otherwise alter the at-will status of the employment relationship. (**Id.**, Exh. A-30 at ¶¶ 8 & 14; Exh. A-31; Exh. A-32.) Given its unequivocal manifestation of an intent not enter into a

---

[2] Indeed, it is not clear from where the terms of the alleged contract supposedly emanate. Plaintiffs appear to rely on the testimony of Barbara Berry regarding her understanding of defendant's progressive discipline policy, but there is no evidence that the terms of these alleged policies were ever communicated to plaintiffs at all, let alone as part of a contractual offer, prior to their respective terminations.

7

contract, defendant is entitled to summary judgment on plaintiffs' breach of contract and promissory estoppel claims. **See Silchia v. MCI Telecommunications Corp.**, 942 F.Supp. 1369, 1374 (D. Colo. 1996) (citing **Ferrera v. Nielsen**, 799 P.2d 458, 461 (Colo. App. 1990)).

Finally, plaintiff Miguel Fontanet has brought a claim for hostile work environment sexual harassment. This claim is based on allegations that Amezquita on three occasions touched Fontanet on his upper thigh during coaching sessions, and hugged him in the public area of the call center on two other occasions. Assuming *arguendo* that this conduct was related to Fontanet's gender,[3] these isolated incidents, unaccompanied by any sexual suggestion or innuendo, are patently insufficient to establish that the alleged harassment was sufficiently severe and pervasive to give rise to a cause of action under Title VII. **See Riske v. King Soopers**, 366 F.3d 1085, 1091 (10th Cir. 2004) (citing **Harris v. Forklift Systems, Inc.**, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)); **Bolden v. PRC Inc.**, 43 F.3d 545, 551 (10th Cir. 1994) ("[T]here must be a steady barrage of opprobrious . . . comments."), **cert. denied**, 116 S.Ct. 92 (1995). Defendant therefore is entitled to summary judgment on this claim as well.

**THEREFORE, IT IS ORDERED** as follows:

---

[3] The evidence suggests that Amezquita was in the habit of hugging and touching all her team members regardless of gender. **See Riske v. King Soopers**, 366 F.3d 1085, 1091 (10th Cir. 2004) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.") (citation and internal quotation marks omitted).

(1) That Defendant T-Mobile USA, Inc.'s Motion for Summary Judgment [#22], filed April 22, 2005, is **GRANTED**;

(2) That plaintiffs' claims against defendant are **DISMISSED WITH PREJUDICE**;

(3) That **JUDGMENT SHALL ENTER** in favor of defendant and against plaintiffs as to all claims and causes of action;

(4) That the trial preparation conference currently scheduled for August 19, 2005, at 9:00 a.m., as well as the trial, currently scheduled to commence on August 22, 2005, are **VACATED**; and

(5) That defendant is **AWARDED** its costs to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.Colo.LCivR. 54.1.

Dated July 15, 2005, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge